IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:24-mj-87 |
| | ) | |
| DONALD ZEPEDA, | ) | Hon. John F. Anderson |
| | ) | |
| Defendant. | ) | Plea and Sentencing: May 21, 2024 |
| | ) | |

## **UNITED STATES' POSITION ON SENTENCING**

The United States of America, through undersigned counsel and in accordance with 18 U.S.C. § 3553(a), hereby provides its position with respect to sentencing for Defendant Donald Zepeda, who has agreed to plead guilty to one count of disorderly conduct, in violation of 36 C.F.R. § 2.34(a)(4). In exchange, the United States will dismiss the second count: interference with the orderly passage of vehicles, in violation of 36 C.F.R. § 4.2 *adopting* Virginia Code Section 46.2-923. The parties are unable to reach an agreement with respect to sentencing.

For the reasons set forth below, the United States respectfully submits that, in consideration of the § 3553(a) sentencing factors, an appropriate sentence for Defendant Zepeda is thirty days of incarceration and a $750 fine.

## BACKGROUND

On February 13, 2024, at approximately eleven o'clock in the morning, Defendant Zepeda, codefendant Holliday Adams, and a third unidentified person staged a protest on the George Washington Memorial Parkway (the "Parkway") near Donaldson Run, which is in the special maritime and territorial jurisdiction of the United States in the Eastern District of Virginia. The three protestors intentionally forced all northbound traffic to a halt for approximately thirty minutes until the U.S. Park Police arrived and arrested two of the three protestors.

The defendants' disorderly conduct on the Parkway was a planned event that was designed to frustrate the public and attract media attention in the hopes of influencing policy change. Prior to the protest, the defendants took an Uber to the drop-off location, which was in the parking area of the Scenic Overlook. There, they congregated with other individuals and a cameraman, who filmed the defendants' obstruction of traffic. The cameraman's video was publicly posted to social media platforms such as Twitter and Instagram.



The still-frame image above, taken from Twitter, a publicly available source, depicts the protestors blocking the sole northbound lane on the Parkway. Due to major reconstruction, the northbound lanes were reduced from two lanes to one by a concrete barrier. The protestors took advantage of the chokepoint created by the barrier, positioning themselves in front of where the barrier ended. By doing so, the protestors prevented vehicles from driving around them. Instead, northbound vehicles were trapped between the concrete barrier on the right, the center median guardrail at the left, and the protestors at the front.

The people in the trapped vehicles were incensed. The woman in the first car yelled and

cursed at the protestors, threw water at them, laid on her car horn, and repeatedly told them to "get the fuck out of my way." She told the protestors that her son was in the hospital, threatened to run them over and at one point got in her car and inched it toward the protestors. A man from a different car ripped away the sign that Defendant Adams and the unidentified protestor were holding and threw it to the side of the road, and then shoved Defendant Zepeda backwards. He also yelled at the protestors to "Move!" and asked why they didn't go down to the White House. At least two other men also got out of their cars, one of whom would have testified at trial that he was on his way to an appointment to buy a Tesla that day and felt frustrated that the protestors were preventing him from where he needed to go for over half an hour.

Approximately thirty minutes later, U.S. Park Police officers arrived at the scene. In speaking with the protestors, Officer Andrew Vovk confirmed that the protestors knew they were not allowed to obstruct traffic and could be arrested for doing so. Officer Vovk next asked what the goal of the protest was, and Defendant Zepeda answered: "We want the President to declare a climate emergency, but we also want to convey to the public, too, like, it's so bad, that we need to do this sort of thing." Officer Vovk would have testified at trial that he gave the protestors several opportunities to move out of the roadway, but all three remained in the road. As a result, police initiated the arrests. Defendant Zepeda made his body go entirely limp as soon as he was placed in handcuffs, thereby requiring several on-site construction workers to help the officer carry him to the side of the road. Defendants Zepeda and Adams were then transported to the station where they were processed and released.

At trial, Officer Vovk would have testified that codefendant Adams was wearing a sweatshirt and holding a sign indicating that the protestors were associated with the climate action group called "Declare Emergency." Members of the group have carried out several high-profile, non-violent crimes within the past year at the Archives and the National Gallery of Art.

3

The group has a public website (https://www.declareemergency.org) with a Frequently Asked Questions (FAQ) page that answers: "Why does Declare Emergency block roads?" and "Why get arrested and go to jail?" The "jail sacrifice" is identified as an "important strategy" for the group's agenda, as depicted below in its answer to the "Why get arrested and go to jail?" question. Members of the Declare Emergency group are encouraged to get themselves arrested and go to jail as a means of "demonstrate[ing] the importance of [the group's] message." The group relies on arrests to help spread the word about its mission and, in the group's perspective, to highlight the state's oppressive policies.

> **Why get arrested and go to jail?**
>
> Mass arrest is an important strategy of historical nonviolence movements that demanded system change from their governments.
>
> First, it demonstrates the importance of our message. We do not take our actions lightly. The cause is meaningful to us to the point of jail sacrifice. Our friends and families will hear about it and consider why we took such drastic action.
>
> Second, every time the state imprisons us for nonviolently demanding a livable future, we win a moral battle. The more the state oppresses those asking for the right to live in a sustainable world, the less tenable its moral stance becomes in the eyes of the greater public.

**CRIMINAL HISTORY**

Defendant Zepeda has committed multiple crimes across the country over the past five years. In 2019, a jury in Skagit County, Washington convicted him of three offenses: second-

degree burglary, attempted criminal sabotage (Class B felony), and malicious mischief (Gross Misdemeanor) for breaking and entering private property and using a pair of bolt cutters to try and shut off an oil pipeline. The Skagit Superior Court sentenced the defendant to 60 days of incarceration and ordered him to pay $600; however, the court later amended Defendant Zepeda's sentence, such that 55 of the 60 days could be converted to 440 hours of community service.

On or about October 4, 2021, police arrested Defendant Zepeda and two other protestors for blocking traffic on I-275 in Manatee County, Florida. Defendant Zepeda was charged with three counts: obstructing an officer without violence, failure to obey police, and unlawful assembly. The Circuit Court of Manatee County initially withheld adjudication and placed the defendant on probation, but after the defendant committed another offense in the District of Columbia, the court revoked his probation, convicted him of obstructing an officer without violence, and sentenced him to time-served plus community service.

On October 13, 2022, in the Circuit Court of Leon County, Florida, Defendant Zepeda entered a plea of nolo contendere to a first-degree misdemeanor: criminal mischief ($200 to $1,000 in damage) for pouring red and black liquid, representing blood and oil, onto the steps of the Florida Capitol in Tallahassee. The court convicted the defendant, sentenced him to seven days of incarceration, and imposed a $543 fine.

On February 1, 2023, in the Circuit Court of Sarasota County, Florida, Defendant Zepeda was convicted of trespassing on school grounds and refusing to leave. The court sentenced him to six months of probation and imposed a $260 fine.

On April 18, 2023, following a bench trial, Defendant Zepeda was convicted in D.C. Superior Court of Crowding, Obstructing, or Incommoding. The court sentenced Defendant Zepeda to 20 days of incarceration (suspended) and six months of unsupervised probation and imposed a $50 fine. According to a "Declare Emergency" Instagram Post, which appeared

alongside a photograph of Defendant Zepeda and defense attorney Mark Goldstone raising their fists outside the Moultrie Courthouse in D.C., the conviction pertained to Defendant Zepeda's role in blocking a D.C. roadway "(with coal!) back in January 2022."



Finally, on February 14, 2024, one day after Defendant Zepeda was arrested for his disorderly conduct on the Parkway, he stands accused of committing a second premeditated crime: he and a coconspirator secreted a balloon containing red powder into the National Archives Rotunda and used it to vandalize the display case of the U.S. Constitution. The cleanup costs exceeded $50,000 and the Rotunda was closed to the public for two days. As of this writing, a felony destruction of government property charge is pending against Defendant Zepeda in the United States District Court for the District of Columbia. *See United States v. Green et al*, Case No. 1:24-cr-62.

**LEGAL STANDARD AND ARGUMENT**

The standards governing sentencing are well established. Courts must consider the factors set forth in 18 U.S.C. § 3553(a) in determining a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing. *See United States v. Booker*, 543 U.S. 220, 259–60 (2005); *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Such factors include consideration of the nature and circumstances of the offense and the history and characteristics of the defendant. See 18 U.S.C. § 3553(a)(1). The sentence imposed should reflect the seriousness of the offense, the need to promote respect for the law, to provide just punishment for the offense, and to afford adequate general and specific deterrence as a means of protecting the public. *Id.* at § 3553(a)(2).  The Federal Sentencing Guidelines do not apply in this case because disorderly conduct is a Class B misdemeanor. U.S.S.G. § 1B1.9. Ultimately, the sentence imposed must meet a standard of reasonableness. *See Booker*, 543 U.S. at 260–61.

**I.       Statutory Maximum**

Disorderly conduct, in violation of 36 C.F.R. § 2.34(a)(4), carries a maximum possible penalty of six months of imprisonment, a $5,000 fine, and a $10 special assessment. *See* 18 U.S.C. §§ 1865, 3571, 3013.

**II.      Argument**

The United States recommends the Court sentence the defendant to thirty days of imprisonment and impose a $750 fine. Such a sentence is appropriate in this case as a means of adequately deterring Defendant Zepeda from committing similar crimes in the future, deterring others from his affiliated group, Declare Emergency, from celebrating and aspiring towards similar arrests, and protecting the public.

The defendant's disorderly conduct seriously endangered the public and warrants a proportionately severe sanction. Defendant Zepeda's obstruction of traffic created a hazardous

condition for the numerous individuals trapped for over thirty minutes without any reasonable option to turn around or otherwise escape. It was hazardous for anyone experiencing a medical emergency that day because emergency vehicles could not use the northbound side of the Parkway to reach people who needed help. Furthermore, the people in the trapped cars could have been experiencing emergencies, or they could have been on their way to visit sick or infirm family members at area hospitals, as the woman in the first car stated she was trying to do.

      The defendant's actions also inconvenienced likely hundreds of people. Trapped individuals may have missed appointments, or been late to pick up children, open a shop, or get to a court hearing. They may have arrived home late and exhausted, after working a night shift. The possibilities of the circumstances which the trapped individuals were experiencing are endless, which further underscores the importance of the safe and efficient functioning of our road system. Indeed, a primary function of the U.S. Park Police in the Eastern District of Virginia is to keep traffic moving on the Parkway.

      Defendant Zepeda's lengthy criminal history and pattern of undeterred recidivism, including the criminal conduct that he is charged with committing the very next day after the crime before this Court, establishes that short periods of incarceration and lower fine amounts have no impact on his dogged determination to disrespect the law. As detailed above, the defendant has been convicted of violating numerous criminal laws in three states across the country; he is charged with symbolically attacking the original U.S. Constitution at one of this nation's most iconic landmarks one day after the incident at issue; and now he is admitting to violating federal law in the Eastern District of Virginia. A seven-day term of incarceration and a $543 fine, at the higher end of his punishments, did not deter Defendant Zepeda from committing the crime to which he is pleading guilty before this Court. For these reasons, a greater term of incarceration and fine is warranted here.

A sentence of thirty days of imprisonment and a $750 fine is also necessary in this case to generally deter others, particularly members of the Declare Emergency group, from intentionally blocking public roadways. As noted above, Defendant Zepeda's associated group, Declare Emergency, openly champions roadblocks as a primary means of coercing policy change and celebrates arrests as a result. The picture posted on Declare Emergency's Instagram page of Defendant Zepeda and his attorney holding up their fists, is accompanied by a caption with a celebratory tone, as indicated by the exclamation mark following the manner in which Defendant' Zepeda blocked a roadway "with coal!" The Instagram picture and caption, when considered alongside the Declare Emergency group's applauding of arrests on its website, could be interpreted as a sign of solidarity or pride after Defendant Zepeda's conviction and sentence in D.C., further underscoring both Defendant Zepeda and the group's determination to continue violating the law as a means of garnering attention to its agenda. Members and sympathizers of the group are keenly aware of the sentences that courts have imposed on their colleagues. They are calculating the risks and perceived rewards accordingly. For this reason, the need for general deterrence and protection of public safety warrants a meaningful jail sentence and a fine to signal to future protesters that similar disorderly conduct is not taken lightly by the courts and will not be excused with insignificant sanctions.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests this Court impose a thirty-day period of incarceration and a $750 fine. Defendant Zepeda has consistently engaged in criminal activity for the past six years. He poses a threat to the public safety and, thus far, nothing has deterred him from conceiving and carrying out crimes. Therefore, the recommended sentence is sufficient, but not greater than necessary to achieve the goals of sentencing in view of the defendant's history and characteristics and the nature and circumstances of his violation.

                                                           Respectfully submitted,

                                                           Jessica D. Aber
                                                           United States Attorney

Dated: May 15, 2024                                       /s/
                                                           Alexis S. Hughes
                                                          Special Assistant United States Attorney
                                                           Sehar F. Sabir
                                                          Assistant United States Attorney
                                                          United States Attorney's Office
                                                          2100 Jamieson Avenue
                                                          Alexandria, Virginia 22314
                                                          Phone: (703) 299-3924
                                                          Fax:    (703) 299-3980
                                                          Email: alexis.hughes2@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to all counsel of record.

/s/
Alexis S. Hughes
Special Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3924
Fax:   (703) 299-3980
Email: alexis.hughes2@usdoj.gov
